UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SCOTT SOUDERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:22-CV-1045-RHH |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff Scott Souders' appeal regarding the denial of Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (ECF No. 15.) The Court has reviewed the parties' briefs and the entire administrative record, including the transcript and medical evidence. Based on the following, the Court will reverse the Commissioner's denial of Souders' application and remand for further consideration.

**I.    Background**

The Court adopts the statement of facts set forth in Souders' statement of facts (ECF No. 21) and Defendant's response (ECF No. 24-1). Together, these statements provide a fair description of the record before the Court. Specific facts will be discussed as needed to address the parties' arguments.

On or about June 12, 2020, Souders applied for SSI, alleging that he has been unable to work due to disability since May 6, 2020.[1] (Tr. 17, 208-14.) Souders alleged disability due to numerous mental health issues including schizoaffective disorder, ADHD, severe depression, severe anxiety, and bipolar. (Tr. 232.) His application was initially denied and he filed a request for Hearing by Administrative Law Judge (ALJ). (Tr. 125-27.) On July 22, 2021, the ALJ held a hearing on Souders' claim. (Tr. 32-57.) Souders was represented by counsel at the hearing, and an impartial vocational expert testified. *Id.*

In a decision issued on September 15, 2021, the ALJ found Souders was not disabled as defined in the Act from the alleged onset date through the date of decision. (Tr. 26.) On October 27, 2021, Souders filed a Request for Review of Hearing Decision with the Social Security Administration's (SSA) Appeals Council. (Tr. 205-207.) On August 4, 2022, the Appeals Council denied Souders' request for review, and adopted the ALJ's decision in full. (Tr. 1-6.)

## II.     Standard for Determining Disability Under the Act

The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in

---

[1] The alleged onset date was chosen by Souders to avoid a past period wherein Souders' previous application for supplemental social security income was denied. (ALJ Hearing Transcript, Tr. 36.) The record is inconsistent as to the exact date of the prior decision denying disability, but the previous decision that Souders was not disabled under the regulations was issued on May 5, 2020 or May 8, 2020. (*Compare* Tr. 36, 75, 84.)

which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Social Security Administration ("SSA") uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. § 404.1520(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix of the applicable regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. § 404.1520(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfied all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. § 404.1520(a)(4)(v).

### III.   The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ here found that Souders had not engaged in substantial gainful activity since June 12, 2020, the application date. (Tr. 19.) Next, the ALJ found that Souders has the following severe impairments: schizoaffective disorder, depression, anxiety, ADHD, and panic disorder. (Tr. 19.) The ALJ found that Souders'

3

hypertension, obesity, obstructive sleep apnea, hidradenitis suppurative, and dyslipidemia were nonsevere physical impairments.

The ALJ determined that Souders did not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. The ALJ also determined that Souders had the residual functional capacity to perform a full range of work with nonexertional limitations. Specifically, the ALJ found that

> is able to learn, remember, and carry out simple, routine tasks; is able to use reason and judgment to make simple, routine work-related decisions; is able to work at an appropriate and consistent pace while performing simple, routine tasks; is able to complete simple, routine tasks in a timely manner; is able to ignore or avoid distractions while performing simple, routine tasks; must have only gradual changes in job setting and duties; is able to work close to or with others without interrupting or distracting them while performing simple, routine tasks; is able to sustain an ordinary routine and regular attendance at work while performing simple, routine tasks; and is able to work a full day without needing more than the allotted number or length of rest periods during the day while performing simple, routine tasks, with only occasional interactions with supervisors, coworkers and no contact with the general public.

(Tr. 21.) The ALJ found that Souders was unable to perform any past relevant work. (Tr. 24.) Souders was 30 years old and considered a younger individual age 18-44. He has a limited education. The ALJ determined that the transferability of job skills is not material to the determination of disability because he did not have past relevant work. (Tr. 24.) Based on the foregoing, the ALJ found that there are jobs that exist in significant numbers in the national economy that Souders can perform, including material handler (Dictionary of Occupational Titles (DOT) No. 922.687-058, medium exertion level, unskilled, SVP 2, approximately 1,500,000 jobs in the national economy), hand picker (DOT No. 920.587-018, medium, unskilled, SVP 2, approximately 700,000 jobs in the national economy), and laundry (DOT No. 361.687-018, medium, unskilled, SVP 2, approximately 210,000 jobs in the national economy). (Tr. 25.)

Therefore, the ALJ concluded that Souders was not disabled, as defined in the Act, from June 12, 2020, through September 15, 2021. (Tr. 26.)

**IV.     Standard for Judicial Review**

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court must affirm the Commissioner's decision if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole.  *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942. *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consolidated Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the Court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012).  However, the Court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two

5

inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

**V.    Discussion**

Souders makes three arguments for reversal of the Commissioner's decision. First, Souders argues that the ALJ improperly evaluated the medical opinion evidence. Second, Souders makes a general argument that the RFC is not supported by substantial evidence. Third, Souders argues that the ALJ improperly evaluated his subjective complaints under the regulations. The Commissioner responds that the ALJ properly evaluated the evidence in a manner consistent with the SSA's regulations and policies, included all supported limitations in the RFC, and substantial evidence supports the ALJ's determination.

**A. Evaluation of Medical Opinion Evidence**

Souders contends that the ALJ failed to properly assess the medical opinion evidence. First, Souders argues the ALJ erred by finding that Dr. Bhat's opinion was unpersuasive and failing to address consistency. Second, Souders argues the ALJ improperly relied on non-examining physicians' RFCs, namely state agency physicians Dr. Smith and Dr. Akeson. The Commissioner responds that the ALJ complied with agency regulations in evaluating the medical opinions.

The Commissioner's regulations provide that, for claims filed on or after March 27, 2017, ALJs will not defer to or give any specific evidentiary weight, including controlling weight, to any medical opinion. *See* 20 C.F.R. § 416.920c(a) (2017). Instead, ALJs must evaluate the persuasiveness of medical opinions and prior administrative medical findings in light of several factors, the most important of which are supportability and consistency with the record. 20 C.F.R. § 416.920c(a)-(c) (2017). ALJs must explain how they considered the factors of supportability and

consistency in their decisions, but need not explain how they considered the other factors. 20 C.F.R. § 416.920c(b) (2017).

For supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical findings will be." 20 C.F.R. §§ 404.1520c (c)(1); 416.920c (c)(1). Thus, supportability is an assessment of how well a medical source supported and explained his or her opinion. *Daniels v. Kijakazi*, No. 21 Civ. 712 (GWG), 2022 WL 2919747, at *5, (S.D.N.Y. July 26, 2022).

The regulations provide that "consistency" means "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c (c)(2); 416.920c (c)(2). "Thus, '[c]onsistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record, not just what a medical source had available to them.'" *Daniels*, 2022 WL 2919747, at *5 (quoting *Cuevas v. Comm'r of Soc. Sec.*, 2021 WL 363682, at *10 (S.D.N.Y. Jan. 29, 2021)).

  1. <u>Opinion of the Treating Physician</u>

Souders' psychiatrist, Dr. Bhat, completed two forms titled "Mental Residual Functional Capacity Assessment" and "Assessment for Social Security Disability Claim" and signed and dated each form on July 21, 2021 (Tr. 556-57.) The Mental Residual Functional Capacity Assessment had check box options for the user to choose whether Souders had a mild, moderate, marked, or extreme limitation in various categories. For concentration and performance, Dr. Bhat

7

opined that Souders had a moderate limitation[2] in his ability to: maintain a work schedule and be consistently punctual; understand, carry out and communicate to others simple work instructions; and understand, sequence and carry out detailed instructions. Dr. Bhat opined that Souders had a marked limitation[3] in his ability to: maintain adequate attention, concentration, and focus on work duties; use judgment and make appropriate simple work related decisions; and stay on task without distractions or need for redirection. For Social Interactions, Dr. Bhat opined that Souders had moderate limitations in his ability to: work in coordination with, or in close proximity to others; accept instructions and respond appropriately to criticism from supervisors; and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. Dr. Bhat also opined that Souders had marked limitations in his ability to interact appropriately with the general public or customers. For Adaption, Dr. Bhat opined that Souders had marked limitations in his ability to respond appropriately to routine changes in the work setting; control emotions and deal with routine work related stressors; work independently at a competitive pace (without constant supervision); and demonstrate reliability in a work setting. Dr. Bhat opined that Souders had an extreme limitation[4] in his ability to sustain extended periods of employment (greater than 6 months) without decompensation from periodic exacerbation of psychiatric symptoms. Dr. Bhat opined that Souders would be off task 10-15% of the workday and that he would miss work an estimated 3 days per month. (Tr. 556.)

---

[2] "Moderate" is defined on the form as follows: "Indicates the ability to perform the activity is only fair. Performance is significantly impaired in terms of proficiency and/or the ability to sustain the particular activity over the course of a work day/week. Indicates the activity can be performed most of the time but not consistently, no more than 2/3 of the work day." (Tr. 556.)

[3] "Marked" is defined on the form as follows: "Indicates a serious limitation. The particular activity could be performed on a satisfactory level only occasionally, no more than 1/3 of the work day." (Tr. 556.)

[4] "Extreme" is defined on the form as follows: "Indicates complete inability to perform the activity independently on a sustained basis." (Tr. 556.)

In the Assessment for Social Security Disability Claim, Dr. Bhat completed four sections. In "Psychiatric History:" Dr. Bhat wrote, "Patient has been treated since childhood – pt had an evaluation in 2011 with [diagnosis] of learning disability, reading disorder, ADHD, inattentive type since initiating treatment with me, he has tried multiple jobs but has become unable to function secondary to severe anxiety, mood lability, insomnia, and depression/reactivity." (Tr. 557.) In "Present symptomatology and current 5 axis diagnoses:" Dr. Bhat wrote, "Patient continues to describe intermittent insomnia, racing thoughts, negative, self critical thought processes, anxiety and difficulties with attention and sustained focus—this presentation is more consistent with Bipolar II Disorder, GAD, and ADHD inattentive type." *Id.* In "Recommended treatment, prescribed medication and its success:" Dr. Bhat wrote, "Patient has had partial improvement in symptoms on current medications but does have [sic] had to be adjusted secondary to side effects." *Id.* In the section on Dr. Bhat's opinion as to what extent Souders' mental impairments affect and/or prevent his ability to engage in sustained full-time employment and how long this condition has affected him in such a way, Dr. Bhat wrote, "Given his history of inadequate response to medications and therapy with chronic symptoms, his ability to engage in full time employment is very limited." *Id.*

The ALJ found Dr. Bhat's opinion to be unpersuasive:

> Dr. Bhat found a mix of mostly moderate and marked mental impairments, an extreme limitation in ability to sustain extended periods of employment without decomposition, 10-15% off task time, and absent three days a month due to symptoms. His opinion was inconsistent with the lack of hospitalization due to psychiatric complaints, his mental status exams, which did not support his indicated level of impairment and were largely normal aside from anxiety, and the claimant's reporting of activity like driving.

(Tr. 23.)

9

Souders argues the ALJ erred in evaluating Dr. Bhat's opinion by requiring hospitalization or suicidal ideation to find a claimant is disabled or otherwise severely limited and by characterizing Souders' mental status exams as largely normal. Contrary to Souders' suggestion, the ALJ did not impose additional requirements for a finding of disability under the regulations. Lack of hospitalization and severity of symptoms are appropriate factors for an ALJ to consider in evaluating the consistency of a medical opinion. *See, e.g., Englerth v. Colvin*, No. 1:15CV82NCC, 2016 WL 5470170, at *6 (E.D. Mo. Sept. 29, 2016) (physician "noted that Plaintiff had no history of inpatient psychiatric treatment and that she never sought emergency mental health treatment" and "[s]uch conservative treatment and a lack of hospitalization for mental health problems are consistent with discrediting a claimant's allegation of disabling mental health impairment"); *Bascue v. Kijakazi*, No. 21-06122-CV-SJ-WBG, 2023 WL 1437700, at *6 (W.D. Mo. Feb. 1, 2023) (ALJ is permitted to consider whether conservative mental health treatment, lack of hospitalization, and resistance to treatment undermine a claim of severe disabling conditions). Additionally, the ALJ's assessment that Souders' mental status exams were largely normal aside from anxiety and therefore did not support the level of impairment indicated by Dr. Bhat was supported by substantial evidence. *See* 20 C.F.R. § 404.1520c(c)(1) (explaining objective medical evidence and supporting explanations are persuasive to the "supportability" factor); *Starman v. Kijakazi,* No. 2:20-CV-00035-SRC, 2021 WL 4459729, at *4 (E.D. Mo. Sept. 29, 2021) (When discussing supportability, ALJs can consider whether the physician's own treatment notes support the physician's opinion). Dr. Bhat treated Souders on eight different occasions after the alleged onset date, both in person and via telehealth. Souders points to occasions where Souders had an anxious and/or depressed mood, but the exams also consistently reflected that Souders had no delusions or hallucinations, his affect was in the normal range, his thought process was goal

directed and logical, his insight/judgment was normal, and his memory/concentration was intact. (Tr. 397, 421, 446, 540, 543, 546, 549, 909.) Although normal clinical exam findings can be of limited relevance to one's ability to work in the real world, the ALJ's consideration of the objective mental exams and their lack of support for the marked and extreme limitations identified by Dr. Bhat is not grounds for reversal. The ALJ could reasonably conclude that the record does not support the marked and extreme limitations assessed by Dr. Bhat. *See England v. Astrue*, 490 F.3d 1017, 1019 (8th Cir. 2007) ("If substantial evidence supports the decision, we will not reverse, even if substantial evidence could have been marshaled in support of a different outcome.") (citation omitted).

        2.        <u>Opinions of the State Agency Physicians</u>

In August 2020, Raphael Smith, PsyD, a state agency psychological consultant, reviewed the evidence available at the time, including medical records, the record of Souders' phone interview with the claim representative, and his function report. Dr. Smith concluded that Souders had moderate limitations in the four "Paragraph B" criteria of the Listings. Dr. Smith found that Souders' most limiting symptom appeared to be his ability to interact with others, but he should be able to perform with restrictions. (Tr. 87.) Dr. Smith concluded that Souders could understand, remember and apply information with simple to moderately complex level tasks, could interact on a limited basis in non public settings, could concentrate, persist and maintain pace with simple to moderately complex level tasks, and could adapt and manage himself in a simple to moderately complex work setting. (Tr. 91.)

In December 2020, Steven Akeson, PsyD, another state agency psychological consultant, reviewed the evidence on reconsideration of the initial disability determination. Dr. Akeson concluded that Souders had moderate limitations in three of the four "B" criteria, and had only

11

mild limitation in the ability to adapt or manage oneself. (Tr. 99.) Dr. Akeson concluded that the additional medical evidence available at the time he reviewed the record "further affirms the initial decision." (Tr. 101.) Similar to Dr. Smith, Dr. Akeson concluded that Souders could understand, remember and apply information with simple to moderately complex level tasks, could interact on a limited basis in non public settings, could concentrate, persist and maintain pace with simple to moderately complex level tasks, and could adapt and manage himself in a simple to moderately complex work setting. (Tr. 103.)

The ALJ found Dr. Smith and Dr. Akeson's opinions to be somewhat persuasive. (Tr. 24.) Souders argues that the ALJ's explanation for finding the physicians' opinions to be partially persuasive is conclusory and fails to discuss how supportability and consistency were considered. The undersigned disagrees. In evaluating the state agency physicians' opinions, the ALJ pointed to parts of the record that demonstrated the opinions were consistent with the evidence in the record, namely that the opinions regarding moderate impairments in interacting with others and concentration, persistence, and pace were supported by Souders' noted anxiety during exams and his trouble attending social functions. (Tr. 24.) In determining that Dr. Smith's finding regarding a moderate impairment in understanding, remembering, or applying information was not supported by Souders' exams, the ALJ referenced Souders' exams documenting normal cognition and otherwise normal intelligence. (Tr. 20, 24.) Further, the ALJ concluded that Dr. Akeson's finding that Souders had a mild impairment in adapting and managing was inconsistent with his prior presentation to the emergency room for anxiety related symptoms and difficulty with managing activities like playing video games.

The ALJ certainly could have gone into further depth regarding her analysis, but she makes clear which parts of Dr. Smith and Dr. Akeson's opinions she credited and which parts she rejected

12

and provides some support for those decisions. On this record, the ALJ considered the supportability and consistency factors in accordance with the applicable regulations. *See* C.F.R. §§ 404.1520c(b)(2), 404.1520c(c)(1)-(2).

### B. Substantial Evidence Supporting the RFC

Souders argues that the RFC is not supported by substantial evidence generally and lacks sufficient rationale describing how the evidence supports the conclusions. Souders contends that the RFC is "not supported by any medical opinion in the record, including the state agency opinion evidence." (ECF No. 20 at 8.) However, Souders also argues that the ALJ erred in relying on state agency physician opinions while rejecting the opinion of Souders' treating physician, effectively conceding that Souders did rely on some medical opinion evidence. (ECF No. 20 at 6.) Moreover, despite finding Dr. Bhat's opinion to be unpersuasive, the ALJ did incorporate restrictions in the RFC that took into account the moderate limitations Dr. Bhat identified in her opinion. With respect to the state agency opinions, Souders argues that an ALJ cannot rely on a non-examining physician's RFC when the agency RFC assessments were completed almost a year before the hearing. The Court cannot agree. First, in determining a plaintiff's RFC, an ALJ may rely on medical opinion evidence from state agency consultants. *See* 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1) (noting that federal or state agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation); *see also Casey v. Astrue*, 503 F.3d 687, 8, 503 F.3d at 694 ("The ALJ did not err in considering the opinion of [the State agency medical consultant] along with the medical evidence as a whole."). Second, the ALJ here does not simply adopt the RFC of the state agency physicians. As discussed above, the ALJ partially rejects Dr. Smith and Dr. Akeson's findings. Third and most importantly, the ALJ's decision considers

13

and cites to evidence from before and after the state agency physicians conducted their reviews. (*See* Tr. 23, 24.)

Souders also argues that the ALJ ignored more than 300 pages of records from his psychotherapist, Gary Mitchell, MSW, LCSW. (Tr. (Tr. 579-907.) Souders argues that this evidence was not discussed in the decision and makes up the bulk of the medical evidence supporting Souders' allegations. The Commissioner responds that the ALJ is not required to discuss every piece of evidence, and the therapy notes from the relevant time period (Tr. 650-778) were largely recitations of Souders' complaints and contained few actual mental status examination findings.

The administrative record contains two exhibits of therapy records from Mr. Mitchell. First, Exhibit B5F contains fourteen pages of records from at least five therapy sessions in June 2020, shortly after the May 6, 2020 alleged onset date. (Tr. 404-417.) Exhibit B18F contains 329 pages of therapy session records from January 2019 to July 2021. In her opinion, the ALJ states Souders received treatment from a psychiatrist, "but only recently began therapy." (Tr. 21.) This is incorrect, as the record contains evidence of sessions dating back to January 2019 (Tr. 878-906) and the previous ALJ decision denying benefits references treatment with Mr. Mitchell as early as 2013 (Tr. 71).  In her brief summary of the medical evidence, the ALJ cites to the June 2020 records in Exhibit B5F, noting that "therapy notes indicated passive suicidal thoughts and reported poor concentration, but alternatively report feeling ok and did not report triggers." (Tr. 23.) The ALJ does not reference any of the other therapy records in her discussion.

Even if an ALJ fails to discuss a particular medical record, "an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Chaney v. Colvin,* 812 F.3d 672, 678 (8th Cir. 2016); *see also Van Vickle v. Astrue,* 539 F.3d 825, 830 (8th Cir. 2008) (finding that an ALJ's

14

mistake of fact in regard to the record is harmless error when "[t]here is no indication that the ALJ would have decided differently" had there been no mistake). However, the combination of the failure to cite the voluminous therapy records in Exhibit B18F, the ALJ's incorrect statement regarding "only recently beg[inning] therapy", and the ALJ's summary statement that "claimant's reporting and psychiatric records did not support the alleged level of impairment" (Tr. 24) suggest that the ALJ incorrectly believed Souders only received psychotherapy treatment in June 2020 and likely did not consider Souders' other therapy records from the relevant time period. If the ALJ did consider these records, the ALJ does not explain whether they were consistent with the medical opinions or supported the RFC, and the Court is left to speculate as to the ALJ's reasoning.

"While a deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency has no practical effect on the outcome of the case, inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis for remand." *Draper v. Barnhart*, 425 F.3d 1127, 1130 (8th Cir. 2005) (internal quotations omitted). "Remand is warranted where the ALJ's factual findings, considered in light of the record as a whole, are insufficient to permit this Court to conclude that substantial evidence supports the Commissioner's decision." *Vance v. Berryhill*, 860 F.3d 1114, 1118 (8th Cir. 2017) (citing *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008)). In this case, the Court cannot affirmatively state that the ALJ would have made the same decision had she realized Souders was in almost weekly therapy sessions for the relevant time period and considered the therapist's assessments. After recounting Souders' treatment and the medical opinions, the ALJ explicitly stated that Souders' reporting, his psychiatric records, his emergency room treatment records, and even his sleep study did not support his alleged level of impairment. (Tr. 24.) The ALJ's statement omitted only the therapy records, which are more relevant to his impairments than his sleep study records. In light

15

of the ALJ's reliance on the incorrect statement that Souders "only recently began therapy" and the strong likelihood that the ALJ did not consider the therapy records in reviewing the record as a whole, the Court will reverse and remand this action for the ALJ to consider the therapy records in determining the RFC, giving the ALJ the benefit of the entire administrative record. Because reversal is warranted on this point of error, the Court need not address the final point of error regarding evaluation of Souders' subjective complaints.

Upon reconsideration of appropriate evidence, the ALJ may well determine that Souders is not disabled. The Court is aware that upon remand, the ALJ's decision as to non-disability may not change after properly considering all evidence of record and undergoing the required analysis, but the determination is one the Commissioner must make in the first instance. *See Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000) (when a claimant appeals from the Commissioner's denial of benefits and the denial is improper, out of an abundant deference to the ALJ, the Court remands the case for further administrative proceedings); *Leeper v. Colvin*, No. 4:13-CV-367 ACL, 2014 WL 4713280 at *11 (E.D. Mo. Sept. 22, 2014) (ALJ duty to make disability determination).

## VI.     Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Plaintiff's Complaint and Brief in Support of Complaint is **GRANTED** in part and **DENIED** in part. (ECF Nos. 1, 20.)

**IT IS FURTHER ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED** for further proceedings.

**IT IS FURTHER ORDERED** that a Judgment of Reversal and Remand will be filed contemporaneously with this Memorandum and Order remanding this case to the Commissioner of Social Security for further consideration pursuant to 42 U.S.C. § 405(g), sentence 4.

Dated this 29th day of September, 2023.

                                              RODNEY H. HOLMES
                                              UNITED STATES MAGISTRATE JUDGE